## Weiss v. Zoning Hearing Board of Durham Township

Before Beckert, Bodley and Garb, JJ.

*Richard P. McBride,* for appellants.
*Peter N. Harrison,* for appellee.
*Hartzel & Bush,* for Durham Township.

BECKERT, J., April 10, 1974.—Julius Weiss and Sophie Weiss, his wife (appellants) own and utilize two parcels of land in Durham Township, Bucks County, Pa., whereon they reside and conduct a business known as Pick and Poke Antiques. Both parcels are titled in the name of one Fannie Weiss.

By letter dated April 12, 1972, appellants were notified by the Durham Township zoning officer, that they were within 15 days to "cease and desist in the storage of junk" in their front and rear yards, said activity allegedly having been violative of article X, sec. 1001 of the township zoning ordinance. An appeal was taken from that order to the Durham Township Zoning Hearing Board and a public hearing was held before the board on June 12, 1972. After considering the evidence presented at the hearing, the board affirmed the order of the zoning officer (the board reached their decision in July 1972, but the exact date is not apparent from the record). The present appeal arises from that decision of the zoning hearing board.

We have been asked to resolve whether the zoning hearing board exceeded their jurisdiction in rendering their decision, and whether that decision was adequately supported by evidence offered at the hearing before them.

With regard to the first of these questions, appellants contend that the board's power was limited in determining whether there was "junk," within the meaning of the zoning ordinance, stored by appellants on the subject premises, and that the board exceeded its powers by framing a decision based upon its consideration of the nature of the commercial enterprises being conducted there and whether a nonconforming use existed which permitted appellants' activities.

The zoning officer's order to appellants directed them to cease and desist in the storage of junk on the property occupied by them, and the advertisement giving public notice of the hearing was limited to that question only. The record shows no mention prior to the hearing of a further question revolving around expansion of a nonconforming use. Despite the somewhat ambiguous statement by counsel for appellants,

which appears at the bottom of the first page of the minutes of the zoning hearing board, and which is construed by the township as indicating his acquiescence in expanding the scope of the hearing, we find that the record overall shows that it was the intention of the parties only to consider whether there was junk stored on the premises, without regard to the collateral question of rights vested under a nonconforming use classification. At the outset of the hearing, counsel appearing on behalf of the Durham Township Supervisors, when asked to state the issue involved, said simply, "The zoning officer issued a cease and desist order in this case," to which appellants' counsel added, "The cease and desist order was issued to the operation of a junkyard. This is a matter of nomenclature."

The basic notice requirement set forth in section 908(1) of the Pennsylvania Municipalities Planning Code of July 31, 1968, P. L. 805, as amended, 53 PS § 10908(1), and in section 1407 of the Durham Township zoning ordinance, gives us no guide as to the specificity of notice required. The code provides that notice is to be given in the manner prescribed by the governing ordinance, and the ordinance here reads, in relevant part:

"SECTION 1407. Public hearings.

"Upon the filing with the Board of Adjustment of an appeal . . . the Board of Adjustment shall fix a reasonable time and place for a public hearing, and shall give public notice thereof, as well as due notice to the parties in interest by certified mail, . . ."

Absent any definition in the ordinance of "public notice," and we find none, we feel that it is reasonable for us to be guided by section 107(18) of the code, 53 PS § 10107(18): "Such notice shall state the time and place of the hearing and the particular nature of the matter to be considered at the hearing." In this case, the "particular nature of the matter" was a cease and

desist order, and nothing more. We are unable to determine from the record whether the certified mail notice required by the ordinance was sent to appellants, and, if so, its contents.

We, therefore, hold that the findings and conclusions reached by the zoning hearing board with respect to the existence or validity of a nonconforming use which may or may not have been established by appellants, being founded upon evidence which should not have been before them for consideration at the hearing and which concerned matters not advertised, were improper.

Even if we were convinced, which we are not, that the parties agreed at the hearing to consider additional questions, beyond the scope of the zoning officer's order, by such agreement the parties could not create jurisdiction in the board: Wetherill, Jr., et al. v. Zoning Board of Adjustment, 5 Bucks 264 (1956).

However, it is within our power under section 1011(1) of the Act of June 1, 1972, P. L. 238, 53 PS §11011(1), of the code to modify or affirm, in part, the decision of the board below, so we will next consider whether there was adequate other evidence in the record to support the board's affirmance of the zoning officer's order.

"Junk" is defined in section 102 of the Durham Township Zoning Ordinance as follows:

"16. Junk. Any worn, castoff, or discarded article or material which is ready for destruction or which has been collected or stored for sale, resale, salvage, abandonment, dismantling, demolition, or conversion to some other use. Any such article or material stored on the farm for exclusive use of the owner or occupant of the farm in pursuit of farming shall not be considered junk."

While the foregoing definition differs slightly from that which appears in the Durham Township Junk-

yard and Refuse Ordinance, we will disregard the latter, in view of the agreement by the township's counsel that this proceeding was not being brought under the Junkyard Ordinance. This is consistent with the original notice issued to appellants by the zoning officer, wherein he cited the basic ordinance as his authority.

We readily agree with counsel for appellants that this definition appears to be so broad as to include goods stored on particular premises for resale as antiques, and might well be unenforceable if attacked on constitutional grounds, but that question is not directly before us now.

The scope of the township's objection is found in the statement of the zoning officer, who testified at the hearing:

"The objectionable items, as far as the local establishment is concerned, are the reels which are very close to the road, the concrete slabs, the old broken down building, the tires, the steel drums, the old tractor."

Appellants offered evidence to show the nature of these items and the reasons for their presence on their premises, and in view of that evidence we have difficulty in seeing how the township could have carried its burden of proving that the various items were "worn, castoff or discarded" under a reasonable reading of the ordinance.

The reels to which the zoning officer referred were apparently being kept by appellants for sale as picnic tables. Appellant Julius Weiss said more than 100 of such reels had been sold by him in the past year. No testimony was given to indicate the condition of the reels and particularly whether they were "worn."

Weiss further testified that the concrete slabs were not for sale, but rather were to be utilized, apparently for personal use, as steps along the canal and across

a lawn area. Similarly, the tires objected to were to be used as a fence, as further development of appellants' property progressed. While it is certainly possible that such a fence might be displeasing in the eyes of persons other than appellants, that is not a relevant consideration here.

The steel drums, like the large wooden reels, were kept by appellants for sale, and there apparently was a regular turnover of inventory. The tractor objected to was sitting on the premises awaiting an engine.

There was additional testimony concerned with telephone wire, the intended use of which was not explained, and lumber, neatly piled, to be used in putting up a small outbuilding to house mowing equipment. While there was also testimony about an old automobile, it apparently was no longer on the premises at the time of the hearing.

Finally, reference was made to a "broken down building" on the south side of appellants' property. Appellants did not refute the testimony of other witnesses indicating that the building was in an advanced state of disrepair and had actually collapsed.

We, therefore, find that the position of the zoning officer of the township was not carried as to any of the articles cited as being in violation of the ordinance. Nothing appears of record to demonstrate that the reels, wire, tires, lumber or steel drums were "worn, castoff or discarded." As to the tractor and concrete slabs, there was no showing that these articles were "for sale" or abandoned. As for the collapsed building, we do not find that it was "ready for destruction" or "collected," given the usual meaning of those terms and despite neighbors' obvious feelings that the building should be destroyed or removed.

Obviously, a number of the aforementioned articles were present on the Weiss premises for appellants' own use. With respect to those, we must agree with

appellants that a reasonable construction of the ordinance would exclude storage of goods on one's own premises for one's own personal use from the broadly worded prohibition which appears therein as to "use." It is well recognized that restrictions imposed in zoning ordinances are in derogation of the common law and must be strictly construed: Lord Appeal, 368 Pa. 121 (1951).

While we recognize that appellants may be utilizing the premises in question in a manner which other members of their community view as offensive, we nevertheless do not feel that the cited provisions of the Durham Township Zoning Ordinance either provide or were intended to provide relief under these particular circumstances. Any other interpretation of the ordinance would unduly prohibit residents from reasonably using and enjoying their private property.

For the foregoing reasons, we enter the following

### ORDER

And now, April 10, 1974, the decision and order of the Durham Township Zoning Hearing Board is hereby reversed and vacated.